UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| XPOINT TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INTEL CORPORATION, FARSTONE TECHNOLOGY, INC., ACRONIS INC., HEWLETT-PACKARD COMPANY, DELL INC., MICROSOFT CORPORATION, ACER INC., ACER AMERICA CORPORATION, GATEWAY INC., TOSHIBA CORPORATION, AND TOSHIBA AMERICA, INC.,<br><br>Defendants. | Civil Action No. _____<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT FOR PATENT INFRINGEMENT

1.    Plaintiff Xpoint Technologies, Inc. ("Xpoint" or "Plaintiff"), by and through its attorneys, for its Complaint against Defendants Intel Corporation ("Intel"), FarStone Technology, Inc. ("FarStone"), Acronis Inc. ("Acronis"), Hewlett-Packard Company ("HP"), Dell Inc. ("Dell"), Microsoft Corporation ("Microsoft"), Acer Inc. ("Acer"), Acer America Corporation ("Acer America"), Gateway Inc. ("Gateway"), Toshiba Corporation ("Toshiba"), and Toshiba America, Inc. ("Toshiba America"), alleges the following.

## NATURE OF THE ACTION

2.    This action seeks monetary damages and injunctive relief under the Patent Act of the United States, 35 U.S.C. § 1 *et seq.*, to remedy Defendants' infringement of United States Patents No. 7,024,581 and No. 7,430,686, both entitled "Data Processing

Recovery System and Method Spanning Multiple Operating System" (the "'581 Patent" and "'686 Patent," respectively, and collectively the "Xpoint Patents"),[1] and the harm to Xpoint caused by Defendants' infringement. The '581 Patent and '686 Patent were issued to Xpoint as assignee of the inventors, Frank Wang and others, on April 4, 2006 and September 30, 2008, respectively. The application that resulted in the '686 Patent was a continuation of the application that resulted in the '581 Patent. The '581 Patent and the '686 Patent are now, and have been at all times since their respective dates of issuance, valid and enforceable.

**Xpoint, Frank Wang, and the Xpoint Patents**

3.      Frank Wang, the lead inventor of both the '686 Patent and the '581 Patent, is a founder and the President and Chief Executive Officer of Xpoint, a privately held computer and networking technology company. Mr. Wang has over 30 years of experience in the computer and networking industry. Before founding Xpoint in 1994, Mr. Wang was for ten years the General Manager of the Internetworking and Workstation Adapter business of Ungermann-Bass, a leading computer networking company (later acquired by Tandem Computer). Before joining Ungermann-Bass, Mr. Wang worked for six years at IBM, where he was a member of the original core technology team that developed the first IBM personal computer. Mr. Wang holds M.S. and B.S. degrees in electrical engineering from the State University of New York at Stony Brook.

4.      In summary, the Xpoint Patents disclose and claim a data processing recovery system for restoring a computer system after corruption of the primary operating system, applications software, user data, or physical storage area or physical storage

_____

[1]      Copies of the '581 and '686 Patents are attached as Exhibits A and B, respectively.

device. The system and method claimed by the Xpoint Patents involve the creation of a backup copy of a primary storage area (including its operating system) stored outside of the primary storage area. A second operating system is also stored outside of the primary storage area along with incremental user data and changed content of the primary storage area since the first copy. In the event the primary storage area is corrupted or damaged, the Xpoint Patents permit the recovery of that storage area, including its operating system, applications software, and user data, through the use of the second operating system. Among other intended and realized advantages of the Xpoint Patents, the invention optimizes the speed and data integrity of the copy and restore functions.

5. The Xpoint Patents provide significantly enhanced functionality for a variety of computer operating systems. For example, processors and operating systems infringing the Xpoint Patents, which are manufactured and sold by the Defendants, are used in widely sold personal computers and servers. By using the technology covered by the Xpoint Patents to create a separately stored copy along with a second operating system and incremental user data, including changed contents of the primary storage area, such computers and servers are able to quickly complete a backup of the primary storage area with minimal impact to the user and to quickly restore a corrupted primary storage area with a high degree of data integrity. One distinguishing benefit is the capability to restore the primary operating system, user data, or incremental user data on mobile and portable computers without connecting to a network or reinstalling an operating system.

6. Xpoint markets and sells its One Button Restore® technology, which is covered by the Xpoint Patents, and has suffered significant lost business and profits as a result of the Defendants' infringement of the Xpoint Patents.

**Intel Learned of the Technology Claimed by the Xpoint Patents From Xpoint and Has Subsequently Infringed the Patents, Along With FarStone and Acronis**

7.      In September 2002, Intel contacted Xpoint requesting an evaluation license for the Rapid Restore PRO or Rapid Restore Enterprise software systems, both of which rely on the One Button Restore technology covered by the Xpoint Patents. In e-mail discussions regarding the One Button Restore technology, Xpoint described the invention to Intel as consisting of a "2nd line backup and recovery" system that includes an "F11 partition."

8.      Intel and Xpoint proceeded to late-stage discussions about licensing the One Button Restore technology, but Intel ultimately did not license the One Button Restore technology from Xpoint.

9.      Despite failing to enter into a licensing agreement with Xpoint, Intel used its knowledge of the Xpoint Patents technology to develop and sell infringing technology. For instance, Intel has manufactured and sold chipsets and motherboards utilizing FarStone's RestoreIT system and the Acronis True Image technology, both of which infringe the Xpoint Patents.

10.      Intel documentation for its P945, 955, 965 and 975X Express chipsets indicates that they employ FarStone's RestoreIT technology, which provides for a backup and restore system that uses a separate storage area to store a copy of the primary storage area along with a second operating system and user data, and includes all other claimed features, thereby infringing the Xpoint Patents. For example, the Intel Motherboard and RestoreIT 8.1 User Guide describes a sector-based "image file" of the entire system that is stored either externally or internally in a "partition[ed]" area called the "RestoreIT Secure Area" that contains "the Pre-OS Mode program, Incremental Backup Points,

Complete Backup Points and File Backup Records." Other RestoreIT documentation

shows that the software "keeps an ongoing record of all saved changes to your personal

files."

11.     Similarly, Intel documentation for its Intel Motherboard indicates that it

uses Acronis True Image technology, which also includes all claimed features, thereby

infringing the Xpoint Patents. The Acronis True Image 11.0 Home Datasheet describes

the use of a "special, hidden partition" called the Acronis Secure Zone that contains

"[r]aw sector-by-sector images" and a separate operating system called Acronis Startup

Recovery Manager. These features allow the user to "copy your entire PC, including the

operating system, applications, user settings, and all data . . . [and] restore the entire disk

contents in minutes no reinstallations required!"

12.     The infringing chipsets and motherboards manufactured by Intel are used

in numerous brands of desktop, mobile, and business computers, including, for example,

products from Dell, Acer, Acer America, Gateway, Toshiba, and Toshiba America.

**HP Learned of the Technology Claimed by the Xpoint Patents
From Xpoint and Has Subsequently Infringed the Patents**

13.     In January 2003, HP contacted Xpoint about its need for a "quick

restoring" solution and stated that it had received recommendations for Xpoint's product.

14.     Xpoint provided HP with a description of the One Button Restore

technology and the Rapid Restore line of products. After evaluating the One Button

Restore technology, HP purchased a limited license of the Rapid Restore product to sell

to Best Buy Co., Inc. ("Best Buy") for Best Buy's own use (nor for resale). HP did not

enter into a broader license that would permit HP to use the One Button Restore

technology in other systems.

15.    Despite failing to enter into an appropriately broad licensing agreement with Xpoint, HP used its knowledge of the Xpoint Patents technology to develop or sell infringing systems.  For instance, HP has manufactured and sold computer systems for desktop, laptop, and business computers utilizing its Backup & Recovery Manager, which infringes the Xpoint Patents.

16.    HP documentation for the HP Backup & Recovery Manager system indicates that it provides for a backup and restore system that uses a separately stored, sector-based copy of the primary storage partition on a hard disk along with a second operating system and user data, and includes all other claimed features, thereby infringing the Xpoint Patents.  For example, the HP Backup and Recovery Manager Administrator Guide describes a system that makes an initial sector-based copy to create an "Entire Drive Backup" and "Initial Recovery Point," followed by incremental "file-based backups" to recover "Subsequent Recovery Points and individual file and folder backups."  The initial recovery point is always stored in a separate "[r]ecovery [p]artition," while the "Entire Drive Backup" can either be stored in the recovery partition, in which case the partition will be "locked down," or stored externally.  The recovery partition contains a copy of the Windows Preinstallation Environment, which is the "media operating system used for a full PC Recovery (F11 key restore)."

17.    HP documentation refers to the process of recovering the full PC through the use of the F11 key as "One button restore in pre-OS environment."  One Button Restore® has been registered as an Xpoint trademark since May 21, 2002.

**Dell Learned of the Technology Claimed by the Xpoint Patents**
**From Xpoint and Has Subsequently Infringed the Patents**

18.    In January 2003, Steve Park, a member of Dell's corporate strategy team, visited Xpoint's headquarters to discuss Xpoint's products, with the goal of arriving at a potential licensing deal for the One Button Restore technology.  Prior to the visit, in November 2002, Dell and Xpoint executed a Non-Disclosure Agreement.

19.    In March 2003, Xpoint drafted a non-binding Letter of Understanding ("LOU") between Xpoint and Dell.  The letter was drafted "[p]ursuant to Dell's stated interest in making Xpoint's first-to-market Automatic Managed Recovery™ technology its standard for client recovery" and stated that "Dell seeks to enter into a three year Strategic Sourcing Agreement (the 'Agreement') with Xpoint."  ("Automatic Managed Recovery" is an Xpoint trademark for the same technology covered by the "One Button Restore" mark.)  The LOU also stated that "the driving force" behind the Agreement was to sell and support the One Button Restore technology.  Later that month, Dell responded by circulating an edited version of the LOU, in which none of the above provisions were altered.  This revised LOU was not ultimately executed.

20.    Despite failing to enter into a licensing agreement with Xpoint, Dell used its knowledge of the Xpoint Patents technology to develop or sell infringing systems.  For instance Dell has sold its own-brand "Dell Local Recovery" and "Dell DataSafe" computer restore products, which both infringe the Xpoint Patents.  Dell also has sold and continues to sell computer products utilizing, *inter alia*, Intel Motherboards with RestoreIT and TrueImage technology and Microsoft Vista Home, Vista Basic, Vista Enterprise, Vista Business, Vista Ultimate, and Server 2008, which all infringe the Xpoint Patents.

**Microsoft Infringes the Xpoint Patents**

21.    Microsoft documentation for the Windows Vista Home, Vista Basic, Vista Enterprise, Vista Business, Vista Ultimate, and Server 2008 operating systems indicates that they provide for a backup and restore system that uses a second storage area separate from the primary storage area to store a copy of the primary storage area of a hard disk along with a second operating system and user data, and include all other claimed features, thereby infringing the Xpoint Patents.  For example, Windows Vista Home and Vista Basic use the System Restore feature, which stores a copy of the primary storage area and incremental user data in a second storage area along with a second operating system.  Similarly, Windows Vista Enterprise, Vista Business, and Vista Ultimate use the Windows Complete PC Backup system, which provides for the creation of a "block-level" (sector-based) image-based backup that is stored as a "Virtual Hard Drive" image file "in a different location from the original files" along with "incremental" user data and the separate Windows Preinstallation Environment operating system.  Finally, Windows Server 2008 employs the Windows Server Backup system to permit the user to "recover your server operating system or full server" by accessing a backup copy saved, along with the Windows Preinstallation Environment operating system, either on a "recovery partition" or locally on the server.

22.    The infringing software and operating systems manufactured by Microsoft are used in numerous brands of desktop, mobile, and business computers, including, for example, products from Dell, Acer, Acer America, Gateway, Toshiba, and Toshiba America.

**The Other Defendants Also Infringe the Xpoint Patents**

23.    Xpoint also believes, based on its investigation, that the other Defendants manufacture infringing products and/or sell or import infringing products in or into the United States.  For example, Acer, Acer America, Gateway, Toshiba, and Toshiba America sell, offer to sell, and/or import into the United States infringing computers containing chipsets, software, and/or operating systems produced by Intel and Microsoft, among others.

24.    The magnitude of Defendants' infringement is enormous.  For example, approximately 67 million personal computers, including 16.8 million HP computers, were sold in the United States in 2007.  That same year, sales of servers in the United States reached more than 2.8 million.  Many of these computers and servers contained Intel chipsets and Microsoft Windows Vista or Windows Server 2008 operating systems.

## JURISDICTION, PARTIES AND VENUE

25.    This is an action for patent infringement.  The claims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*  This Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1338(a).

26.    Plaintiff Xpoint is a corporation organized and existing under the laws of Delaware, having its principal place of business in Boca Raton, Florida.

27.    Defendant Intel is a corporation organized and existing under the laws of Delaware with its principal place of business at 2200 Mission College Boulevard, Santa Clara, California 95054.

28.    Intel transacts business directly and/or through third parties in this judicial district by manufacturing, using, selling, or offering to sell products as described and

claimed in the Xpoint Patents and/or by conducting other business in this judicial district. Intel has availed itself of this Court's jurisdiction in other patent cases, *e.g., Intel Corp. v. Broadcom Corp.*, No. 1:00-cv-00796-SLR (D. Del. filed Aug. 30, 2000), and *Intel Corp. v. Via Technologies, Inc.*, No. 1:01-cv-00605-JJF (D. Del. filed Sept. 7, 2001). Accordingly, this Court has personal jurisdiction over Intel under Fed. R. Civ. P. 4(k)(1)(A) and 10 Del. C. § 3104(b) and (c).

29.     Defendant FarStone is a corporation organized and existing under the laws of California with its principal place of business at 350 South Hope, Suite A103, Irvine, California 93105.

30.     FarStone transacts business directly and/or through third parties in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in the Xpoint Patents and/or by conducting other business in this judicial district. Accordingly, this Court has personal jurisdiction over FarStone under Fed. R. Civ. P. 4(k)(1)(A) and 10 Del. C. § 3104(b) and (c).

31.     Defendant Acronis is a corporation organized and existing under the laws of Delaware with its principal place of business at 52 Third Avenue, Burlington, Massachusetts 01803.

32.     Acronis transacts business directly and/or through third parties in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in the Xpoint Patents and/or by conducting other business in this judicial district. Accordingly, this Court has personal jurisdiction over Acronis under Fed. R. Civ. P. 4(k)(1)(A) and 10 Del. C. § 3104(b) and (c).

33.    Defendant HP is a corporation organized and existing under the laws of Delaware with its principal place of business at 3000 Hanover Street, Palo Alto, California 94304.

34.    HP transacts business directly and/or through third parties in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in the Xpoint Patents and/or by conducting other business in this judicial district. HP has availed itself of this Court's jurisdiction in other patent cases, *e.g.,He wlett-Packard Corp. v. Intergraph Corp.*, No. 1:04-CV-243-KAJ (D. Del. filed Jan. 27, 2005), and *Hewlett-Packard Corp. v. Papst Licensing GmbH*, No. 01:99-CV-395-SLR (D. Del. filed June 22, 1999). Accordingly, this Court has personal jurisdiction over HP under Fed. R. Civ. P. 4(k)(1)(A) and 10 Del. C. § 3104(b) and (c).

35.    Defendant Dell is a corporation organized and existing under the laws of Delaware with its principal place of business at 1 Dell Way, Round Rock, Texas 78682.

36.    Dell transacts business directly and/or through third parties in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in the Xpoint Patents and/or by conducting other business in this judicial district. Dell has availed itself of this Court's jurisdiction in other patent cases, *e.g.,Agfa Corp., et al. v. Compression Labs, Inc., et al.*, No. 1:04-CV-0818-SLR (D. Del. filed July 2, 2004), and *Internet Media Corporation v. Dell, Inc., et al.*, No. 1:05-CV-0633-SLR (D. Del. filed Aug. 29, 2005). (Dell asserted counterclaims in *Internet Media*.) Accordingly, this Court has personal jurisdiction over Dell under Fed. R. Civ. P. 4(k)(1)(A) and 10 Del. C. § 3104(b) and (c).

37.     Defendant Microsoft is a corporation organized and existing under the laws of Washington with its principal place of business at 1 Microsoft Way, Redmond Washington 98052.

38.     Microsoft transacts business directly and/or through third parties in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in the Xpoint Patents and/or by conducting other business in this judicial district.  Microsoft has availed itself of this Court's jurisdiction in other patent cases, *e.g.*, *Microsoft v. Alcatel-Lucent Enterprise*, No. 1:07-CV-0090-SLR (D. Del. filed Feb. 16, 2007).  Accordingly, this Court has personal jurisdiction over Microsoft under Fed. R. Civ. P. 4(k)(1)(A) and 10 Del. C. § 3104(b) and (c).

39.     Defendant Acer is a corporation organized and existing under the laws of Taiwan with its principal place of business in Taipei, Taiwan.

40.     Defendant Acer America is the United States subsidiary of Acer and is a corporation organized and existing under the laws of California with its principal place of business at 333 W. San Carlos St., Suite 1500, San Jose, California 95110.

41.     Acer and Acer America transact business directly and/or through third parties in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in the Xpoint Patents and/or by conducting other business in this judicial district.  Acer and Acer America have availed themselves of this Court's jurisdiction in other patent cases, *e.g.*,*Elonex  IP Holdings, et al. v. Acer Communications, et al.*, No. 1:01-CV-0096-GMS (D. Del. filed Feb. 13, 2001). (Acer and Acer America asserted counterclaims in *Elonex*.)  Accordingly, this Court has personal

jurisdiction over Acer and Acer America under Fed. R. Civ. P. 4(k)(1)(A) and 10 Del. C. § 3104(b) and (c).

42.     Defendant Gateway is a corporation organized and existing under the laws of Delaware with its principal place of business at 7565 Irvine Center Drive, Irvine, California 92618.

43.     Gateway transacts business directly and/or through third parties in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in the Xpoint Patents and/or by conducting other business in this judicial district.  Gateway has availed itself of this Court's jurisdiction in other patent cases, *e.g.*, *Agfa Corp., et al. v. Compression Labs, Inc., et al.*, No. 1:04-CV-0818-SLR (D. Del. filed July 2, 2004), and *Elonex IP Holdings  v. Gateway*, No. 1:01-CV-0090-GMS (D. Del. filed Feb. 13, 2001).  (Gateway asserted counterclaims in *Elonex*.)  Accordingly, this Court has personal jurisdiction over Gateway under Fed. R. Civ. P. 4(k)(1)(A) and 10 Del. C. § 3104(b) and (c).

44.     Defendant Toshiba is a corporation organized and existing under the laws of Japan with its principal place of business in Tokyo, Japan.

45.     Defendant Toshiba America is the United States subsidiary of Toshiba and is a corporation organized and existing under the laws of Delaware with its principal place of business at 1251 Avenue of the Americas, New York, New York 10020.

46.     Toshiba and Toshiba America transact business directly and/or through third parties in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in the Xpoint Patents and/or by conducting other business in this judicial district.  Toshiba has availed itself of this Court's jurisdiction in

other patent cases, *e.g.,T oshiba Corp. v. Juniper Networks, et al.*, No. 1:03-CV-1035-SLR (D. Del. filed Nov. 13, 2003). Accordingly, this Court has personal jurisdiction over Toshiba and Toshiba America under Fed. R. Civ. P. 4(k)(1)(A) and 10 Del. C. § 3104(b) and (c).

47.    Plaintiff Xpoint and Defendants Acronis, HP, Dell, Gateway, and Toshiba America are organized under Delaware law. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) for at least the reasons that the Defendants reside in Delaware and/or have committed acts within this judicial district giving rise to this action and do business in this district.

## CAUSE OF ACTION FOR PATENT INFRINGEMENT
### (35 U.S.C. § 271 *et seq.*)

48.    Xpoint incorporates by reference herein each and every allegation contained in the paragraphs above as though fully set forth here.

49.    Xpoint owns all right, title, and interest in the Xpoint Patents, including the right to sue thereon and the right to recover for infringement thereof.

50.    Intel manufactures, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products and services that infringe, directly and/or indirectly, or which employ systems or components that make use of systems that infringe, directly and/or indirectly, one or more claims of the Xpoint Patents, including without limitation the FarStone RestoreIT and Acronis True Image technologies, as well as any other software or systems acting or capable of acting in the manner described or claimed in the Xpoint Patents.

51.    FarStone manufactures, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products and services that infringe, directly

and/or indirectly, or which employ systems or components that make use of systems that infringe, directly and/or indirectly, one or more claims of the Xpoint Patents, including without limitation the RestoreIT technology, as well as any other software or systems acting or capable of acting in the manner described or claimed in the Xpoint Patents.

52.    Acronis manufactures, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products and services that infringe, directly and/or indirectly, or which employ systems or components that make use of systems that infringe, directly and/or indirectly, one or more claims of the Xpoint Patents, including without limitation the True Image technology, as well as any other software or systems acting or capable of acting in the manner described or claimed in the Xpoint Patents.

53.    HP manufactures, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products and services that infringe, directly and/or indirectly, or which employ systems or components that make use of systems that infringe, directly and/or indirectly, one or more claims of the Xpoint Patents, including without limitation HP's Backup & Recovery Manager, as well as any other software or systems acting or capable of acting in the manner described or claimed in the Xpoint Patents.

54.    Dell manufactures, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products and services that infringe, directly and/or indirectly, or which employ systems or components that make use of systems that infringe, directly and/or indirectly, one or more claims of the Xpoint Patents, including without limitation Dell Local Recovery, Dell DataSafe, and chipsets, motherboards, software, and/or operating systems produced by Intel and Microsoft, as well as any other

operating systems acting or capable of acting in the manner described or claimed in the Xpoint Patents.

55.     Microsoft manufactures, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products and services that infringe, directly and/or indirectly, or which employ systems or components that make use of systems that infringe, directly and/or indirectly, one or more claims of the Xpoint Patents, including without limitation its Windows Vista Home, Windows Vista Basic, Windows Vista Enterprise, Windows Vista Business, Windows Vista Ultimate, and Windows Server 2008 operating systems, as well as any other operating systems acting or capable of acting in the manner described or claimed in the Xpoint Patents.

56.     Acer and Acer America manufacture, use, sell and offer to sell, and/or import into the United States for subsequent use and sale products and services that infringe, directly and/or indirectly, or which employ systems or components that make use of systems that infringe, directly and/or indirectly, one or more claims of the Xpoint Patents, including without limitation chipsets, motherboards, software, and/or operating systems produced by Intel and Microsoft, as well as any other operating systems acting or capable of acting in the manner described or claimed in the Xpoint Patents.

57.     Gateway manufactures, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products and services that infringe, directly and/or indirectly, or which employ systems or components that make use of systems that infringe, directly and/or indirectly, one or more claims of the Xpoint Patents, including without limitation chipsets, motherboards, software, and/or operating systems produced

by Intel and Microsoft, as well as any other operating systems acting or capable of acting in the manner described or claimed in the Xpoint Patents.

58.    Toshiba and Toshiba America manufacture, use, sell and offer to sell, and/or import into the United States for subsequent use and sale products and services that infringe, directly and/or indirectly, or which employ systems or components that make use of systems that infringe, directly and/or indirectly, one or more claims of the Xpoint Patents, including without limitation chipsets, motherboards, software, and/or operating systems produced by Intel and Microsoft, as well as any other operating systems acting or capable of acting in the manner described or claimed in the Xpoint Patents.

59.    Defendants, through the activities and products listed and described in the paragraphs above, have infringed and are directly infringing the Xpoint Patents, and are also aiding, abetting, and contributing to, and actively inducing infringement of the Xpoint Patents by other Defendants and by non-parties, in the United States and foreign countries, in violation of 35 U.S.C. § 271.

60.    Defendants are not licensed or otherwise authorized to make, use, import, offer to sell, market, provide, or sell any product or method claimed in the Xpoint Patents, and Defendants' infringing conduct is, in every instance, without Xpoint's consent.

61.    By reason of Defendants' infringing activities, Xpoint has suffered, and will continue to suffer, substantial damages in an amount yet to be determined.

62.    Defendants' acts complained of herein have damaged and will continue to damage Xpoint irreparably. Xpoint has no adequate remedy at law for these wrongs and

injuries. Xpoint is therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their officers, directors, principals, agents, servants, employees, successors, and assigns, and all persons and entities in active concert or participation with them, from infringing, and from contributing to and inducing the infringement of, the claims of the Xpoint Patents.

63.     At all relevant times, Defendants have had actual and constructive notice that their conduct infringe on the claims of the Xpoint Patents but nevertheless continued their infringing conduct. Defendants' infringement has been and continues to be willful.

## PRAYER FOR RELIEF

WHEREFORE, Xpoint respectfully requests that the Court grant the following relief:

(a)     enter judgment that Defendants infringe and have infringed the Xpoint Patents;

(b)     declare that Defendants' infringement of the Xpoint Patents has been willful;

(c)     enter a preliminary and permanent injunction enjoining Defendants and their officers, directors, principals, agents, servants, employees, successors, and assigns, and all persons and entities in active concert or participation with them, from infringing, and from contributing to and inducing the infringement of, the claims of the Xpoint Patents;

(d)     enter judgment awarding Xpoint damages from Defendants adequate to compensate for Defendants' infringement, including interest and costs;

(e)     enter judgment awarding Xpoint treble damages based on Defendants'
copying and willful infringement of the Xpoint Patents;

(f)     declare this case to be exceptional and enter judgment awarding Xpoint
increased damages under 35 U.S.C. § 284 and its reasonable attorney fees and costs
under 35 U.S.C. § 285; and

(g)     award Xpoint such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Xpoint respectfully requests a trial by jury on all issues so triable in accordance

with Fed. R. Civ. P. 38.

Dated: January 12, 2009

Respectfully submitted,


BOUCHARD MARGULES &
   FRIEDLANDER, P.A.

BY: _____
DAVID J. MARGULES (#2254)
   EMAIL: DMARGULES@BMF-LAW.COM
222 DELAWARE AVE., SUITE 1400
WILMINGTON, DE 19801
PHONE: (302) 573-3500
FAX: (302) 573-3501

BERNSTEIN LITOWITZ BERGER &
   GROSSMANN LLP
Chad Johnson
   Email: Chad@BLBGlaw.com
John Browne
Jai Chandrasekhar
Sean O'Dowd
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Phone: (212) 554-1400
Fax: (212) 554-1444

SUGHRUE MION, PLLC
William H. Mandir
   Email: WMandir@Sughrue.com
John F. Rabena
Brian K. Shelton
2100 Pennsylvania Ave., N. W.
Washington, DC 20037
Phone: (202) 663-7959
Fax: (202) 293-7860


ATTORNEYS FOR XPOINT TECHNOLOGIES, INC.